IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                                                    CASE NO.:  2:24-CR-20070-DDC

NEWTON JONES, et al.,

          Defendant.

Non-Party International Brotherhood of Boilermakers Union's (IBB) Reply to the United States' Response in Opposition to the IBB's Motion to Modify or in the Alternative to Quash

On the same day that the Government served the IBB with a Fed.R.Cr.P. 17(c) subpoena, it filed a *Motion for Abrogation of Attorney Client Privilege by Waiver* (Abrogation Motion).  Dkt. 107.  Combined, the subpoena and the Abrogation Motion seeks resolution of an issue that impeded prior efforts at a voluntary production:  identification (or lack thereof) as to specific action and communications supporting an advice-of-counsel defense; whether waiver of privilege occurred, and if so, the scope of that waiver.  Though not the only issue, it was the one that presented the biggest hurdle.   The IBB also requested a protective order prior to any production.  The Pretrial and Criminal Case Management Orders[1] filed in the instant matter did not, in the IBBs opinion, offer adequate protection.

---

[1] See Docs 26, 29, 32, 35, 39, 42, 45, the Pretrial and Criminal Case Management Orders filed as to each individual defendant.  These are standard and identical Orders which protect only witness statements to a limited degree.

1

Embedded within the subpoena is the demand for all emails, even privileged ones. With a quick return date of June 18 and because responses to the Abrogation Motion are not due until July 6, the IBB sought protection given the volume of data to produce, the absence of a protective order, and the absence of a resolution of the privilege/waiver issue. In doing so, it sought not to raise the ire of the Government - the IBB is a victim[2] and its role here is as a custodian of records which have potential relevance to some or all of the parties. Rather, it sought relief because without further guidance from the Court as to the issues relating to relevance, privilege and waiver, the undertaking of reviewing tens of thousands of emails in order to create a privilege log related to all the legal communication in a 14-year time span placed an unfair, unnecessary and costly burden on the IBB – and one not authorized by law.

## The nature of the dispute

While a Rule 17(c) subpoena was contemplated in order to front the issue(s) for Court resolution, it was *not* contemplated in the form in which it was received: no accompanying motion setting forth with *Nixon*-required specificity the subject matter to which the defendants' are asserting an advice of counsel defense and why waiver of privilege is applicable to those communications. 418 U.S. 683, 699-700 (1974). Instead there are two documents: One, a broad subpoena which seeks anything and everything contained in a 14-year time span within the email accounts of 9 individuals: 6 defendants, one defendant who has already plead guilty,

---

[2] See Doc. 107 "The Boilermakers Union are essentially a third party, the victim actually, in this criminal prosecution."

a defendant who has pled guilty in a related case, and a former IBB employee. And a separate document, the Abrogation Motion, addresses which addresses the waiver of privilege issue. So instead of being in a combined document in which the Court could address the specificity, relevance, and admissibility, i.e. waiver of privilege, it is in two which means the IBB must respond to both documents in such a way as to preserve its ability to litigate the issues.

Tis true that in an effort to be cooperative, the IBB was agreeable to a production[3] of emails, notwithstanding that it was overbroad but only to the extent it excluded attorney client communications. Not only do the various accounts contain communications with, involving or otherwise related to Blake & Uhlig, the law firm serving as General Counsel for decades, also included were the communications of other lawyers that had been hired over the years for various purposes.

When the IBB expressed concern about relevance and privilege, counsel was told by the government that the defendants were contemplating an advice-of-counsel defense[4]. When the IBB raised the subject matter of the advice-of-counsel defense,

---

[3] Initially the IBB was agreeable to the production of the entirety of defendant Kathy Stapp's emails, although she had already pled guilty and her counsel had not made any request for the emails. However, because Ms. Stapp was the Director of Human Resources and her vast email account is believed to contain thousands of communications related to personnel matters (including medical information as the IBB is self-insured) of individuals not associated with this prosecution, counsel sought relief from the subpoena as to Ms. Stapp. Emails involving the defendants and Ms. Stapp will be located within the defendants email accounts and therefore will be produced, dependent on the Court's ruling.

[4] In its response to the IBBs Motion to Modify, the government asserts that the purpose of ascertaining a broad waiver is to minimize the likelihood that exculpatory, as well as inculpatory, evidence is not improperly excluded from the record. Doc. 107, at 18. Counsel does not know whether that is an expansion of the purpose of the request – an advice-of-counsel defense – or a discovery request.

3

it was met with a generic "all matters within the Indictment." When the IBB raised privilege, it was met with the belief that the IBB had waived privilege as to matters contained within the Indictment. Further effort to define "all matters contained within the Indictment" was unsuccessful and results in the need for Court intervention.

    The inability of either the government or the defendants[5] to identify the specific action to which an advice-of-counsel defense applies fails to clear the hurdle of specificity. *United States v. Morris*, 287 F.3d. 985, 992 (10th Cir. 2002) (citing *Nixon*, 418 U.S. at 700).

Severance of the Issues

    Nothing prevents a third party from voluntarily producing information but it does require an agreement. To be clear, the IBB is willing to produce all emails not involving legal counsel for every custodian except Kathy Stapp. The IBB's only requirement to this voluntary production is that the parties enter into an agreed protective order limiting the use of the information to this case and seeking its return at the conclusion of this matter. Such an order is not unique. In fact, in *United States v. Rajaratnam*, a case cited by the government, the Court directed the parties to enter an protective order. 753 F. Supp. 2d 325 (S.D.N.Y. 2011).

---

[5] When the government and the IBB could not reach an agreement on the specific allegations to which an advice of counsel claim was being asserted, the undersigned turned to defendants counsel for clarification, since it appeared that the government was making the request of the IBB because the defendants had made the request of the government[5]. To date, counsel is unclear as to which allegations the defendants are raising an advice of counsel claim.

The remainder of the emails would be withheld until the Court issues an Order on the Abrogation Motion. This dual approach allows the government and the defendants prompt access to most of the emails they are requesting. It sequesters the remaining emails so that the Court can address the government's request for relief and the IBBs opposition to broad waiver.

Absence of an Agreement

Because the subpoena was obtained without a motion to the Court[6], and because there is no agreement, the IBB has no alternative but to point out that the subpoena fails to meet the specificity, relevance, and admissibility requirements under *Nixon*. While the government relies on cases from other jurisdictions, it neglects to address how this Circuit, and this Court in particular, interpret the requirements of *Nixon*. See *United States v. Clinesmith*, 2025 WL 1517307. The IBBs request conforms with the law: identification of the specific action to which the defendants assert an advice-of-counsel defense (an advice-of counsel defense may satisfy the relevance requirement) and admissibility of those items. It is the requesting party – in this case the government – that must satisfy the hurdles of relevancy, admissibility and specificity. *United States v. Morris*, 287 F.3d 985, 992 (10th Cir. 2002) (citing *Nixon*, 418 U.S. at 700). *Potentially* relevant documents don't meet the standard. *Potentially* admissible documents don't meet the

---

[6] In suggesting that the government obtain a 17(c) subpoena, counsel assumed that it would file the motion that would identify, with specificity, the communications it was requesting, as well as how and why they were relevant and admissible. In doing so, the IBB did not contemplate that the government would simply serve a subpoena and then file a separate motion addressing abrogation of privilege by waiver. The bottom line is that the Government and the IBB need a resolution to this issue.

5

standard.  Documents "must meet the test of relevancy and admissibility at the time they are sought." *United States v. Burger*, 773 F.Supp. 1419, 1425 (D.Kan.1991), *conviction aff'd. but remanded for resentencing*, 964 F.2d 1065 (10th Cir. 1992).  The mere fact that there is interest in *exploring* an advice-of-counsel defense fails the standard.  *United States v. Wittig*, 250, F.R.D. 548 (D.Kan. 2008).

To date, no advice-of-counsel defense has been substantiated as to any allegation.  A defendant must establish: "(1) a request for advice of counsel on the legality of a proposed action; (2) full disclosure of the relevant facts to counsel; (3) receipt of advice from counsel that the action taken will be legal; and (4) reliance in good faith on counsel's advice." *United States v. Wenger*, 427 F.3d 840, 853 (10th Cir. 2005) (internal citation omitted).  No defendant has claimed that they requested advice on the legality of any particular action identified within the Indictment, that they disclosed those facts to counsel (and the identity of that counsel), that they received advice and in accordance and reliance on that advice, undertook a particular action which the government now claims violates the law.

If the subpoena fails to satisfy these requirements, it must be quashed. See *United States v. Lansing*, 2009 WL 321575, at *1 (D.Utah Feb.9, 2009). If the material sought is shielded by privilege, the subpoena may be quashed. Privileged materials are inadmissible.  Fed. R. Evid. 501.  But the first step in the inquiry is identifying the materials with specificity.  This has yet to be done.

Delay

6

Obviously aggravated, the government accuses the IBB of obstructive conduct, stating that the IBB has not complied with the first two (of three) grand jury subpoenas prior to the filing of the Indictment last August. Dkt. 117, at 2 If that's true, this is the first the undersigned counsel has learned of a deficiency. As soon as counsel for the IBB is told of the specific deficiency, the IBB will make every effort to cure the same[7].

That said, counsel understands the desire of all involved to obtain a resolution of the issues so underlying the IBBs *Motion to Modify or Quash* is the intent to balance cooperation with protection of its right to control access to its privileged communications. Further is the recognition of the work involved to make a production of the information requested. The email accounts are in a data management system. Within each account, potential attorney client communications have been segregated[8]. Remaining are more than one million emails that, as soon as the parties agree on a protective order, can be processed for production[9]. The specific timing is dependent on other projects being done by the vendor at the same time, although this matter will be given priority status.

---

[7] Email was not part of the grand jury subpoena. Shortly after the undersigned began representing the IBB, she and Mr. Branden Bell asked the government if they wanted email. AUSA Alhambra said no.

[8] Counsel has made reasonable efforts to identify potential legal communications based on the identification of attorneys and law firms that have been used by the IBB over the years, beyond Blake & Uhlig. This is an extensive number of search terms. However, without identification of the attorneys providing the advice and the specific subject matter and time frame of the advice given and relied upon, it is impossible for counsel to proceed any further.

[9] There is a difference between processing as a result of collection (which has been completed) and processing for purposes of production. The production time is dependent on the volume and other non-related productions occurring which would occupy the equipment. In its Motion to Modify or Quash, the IBB asserted a much quicker turnaround than what her vendor advises is possible. Bottom line, once guidance from the Court is obtained, the IBB will produce, with due diligence, in conformity with any Court order.

Although the IBB's position regarding privilege and waiver will be set forth in detail in its to-be-filed *Response to the Government Motion for Abrogation*, counsel notes that any additional filtering will be cumbersome and time-consuming absent agreement as to search terms, given the volume of emails.

Request for Relief

The government seeks the entirety of the identified email accounts and in a separate motion, contends that the IBB has waived privilege. The IBB is willing to do a segregated production so that emails not potentially subject to attorney client privilege can be produced quickly while the attendant issues regarding specificity, relevance of attorney communications and admissibility (privilege) are sorted out. The IBB simply asks that before producing and material, the parties agree to a protective order.  That's the request for modification.

But if the Government opposes this modification, designed to expedite for resolution the concerns about specificity, relevance and admissibility as to attorney communications, the IBB has no choice but to ask this Court to quash.

Respectfully submitted,
MORGAN PILATE LLC

/s/ Melanie S. Morgan
Melanie S. Morgan, #16088
926 Cherry Street
Kansas City, Missouri 64106
816-471-6694 (Tel)
816-472-3516 (Fax)
Email: mmorgan@morganpilate.com
Attorney for the International
Brotherhood of Boilermakers Union

8

## CERTIFICATE OF SERVICE

I, Melanie Morgan, hereby certify that on the 3rd day of July, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing and a copy of the filing to all counsel of record.

/s/Melanie S. Morgan
Melanie S. Morgan