**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**NEWTON JONES,**<br>**WILLIAM CREEDEN,**<br>**KATERYNA (KATE) JONES,**<br>**WARREN FAIRLEY,**<br>**LAWRENCE McMANAMON, and**<br>**CULLEN JONES**<br><br>**Defendants.** | **Hon. Daniel D. Crabtree**<br><br>**Crim. Case No. 2:24-cr-20070-DDC-TJJ** |

**GOVERNMENT'S MOTION FOR AN ORDER PERMITTING ADMISSION OF INTRINSIC EVIDENCE OR, ALTERNATIVELY, RULE 404(b) EVIDENCE**

The United States, by and through its undersigned attorneys, hereby moves to introduce at trial evidence of actions of Defendant Newton Jones, William Creeden, Warren Fairley and Lawrence McManamon as admissible as intrinsic evidence or, alternatively, under Federal Rule of Evidence 404(b) to demonstrate their respective motives, opportunities, intents, preparations, plans, knowledge, or absence of mistake or accident in committing the offenses charged in the Indictment, and shows as follows:

## I. Allegations in the Indictment

Count One of the Indictment charges Defendants Newton Jones, William Creeden, Warren Fairley and Lawrene McManamon, with racketeering conspiracy under 18 U.S.C. § 1962(d). The Indictment alleges (p. 12, 14-16) that those Defendants participated in the operation of a racketeering enterprise (the "Jones Enterprise") which had as its purposes: 1) enriching members

and associates through, among other things, embezzlement from union funds, wire fraud, and embezzlement from pension and welfare funds; and 2) preserving and protecting the power and profits members and associates through the use of embezzlement from union funds, wire fraud, and embezzlement from pension and welfare funds.

Count One of the Indictment--as well as subsequent individual counts--charge Defendant Newton, Creeden, Fairley and McManamon specifically with Defendant Jones' actions constituting:

--embezzlement by authorizing domestic and international travel for himself and others which was not necessary to meet the objectives of the Boilermakers Union and provided little or no benefit to the Boilermakers Union (pp. 19-20, 27-32) (Counts Six, Ten-Eleven, Fourteen, Sixteen, Twenty-One, and Twenty-Nine);

--embezzlement by means of charging restaurant meals without a union purpose in his hometown of Chapel Hill which was not necessary to meet the objectives of the Boilermakers Union and provided little or no benefit to the Boilermakers Union (pp. 20,33) (Count Thirty-Four);

--embezzlement by means of taking time off from fulltime employment with the Boilermakers Union without using his allotted vacation time and then cashing in his "unused" vacation hours (pp. 23, 40-41) (Count Forty-One);

--wire fraud by arranging a fulltime employment with benefits with the Bank of Labor while he already had a fulltime position with benefits with the Boilermakers Union (pp. 25-26, 51-56) (Count Fifty-Three);

--wire fraud by taking retirement benefits from the Bank of Labor Retirement Plan when he was not a fulltime employee of the Bank of Labor, and thus ineligible to receive those benefits (pp. 25-26, 56) (Count Fifty-Four); and

--theft from an ERISA plan by taking retirement benefits from the Boilermaker-Blacksmith National Pension Trust when he had not worked the number of hours he was reporting to that plan for several years, and thus ineligible to receive those benefits (pp. 26, 57) (Count Fifty-Six).

## II. Proposed Evidence

### A. Defendant Jones' Use of Alcohol

At trial, the Government shall present testimony from several witnesses and exhibits that Defendant Newton Jones is a habitual and prodigious user of alcohol--including during work hours and trips sponsored by the Boilermakers Union. The evidence will show his heavy and pricey use of alcohol extended to personal restaurant meals in his hometown of Chapel Hill where Defendant Jones used the Boilermakers Union American Express ("AMEX") card to pay the tabs. The testimony offered will not be limited to enjoying an extra beer or two at union events, but specific accounts of Defendant Jones' well-known fondness for Prosecco and consumption of numerous bottles of fine wines costing hundreds of dollars each, often on the Boilermakers Union tab.

Those witnesses will also testify that Defendant Jones' immoderate use of alcohol caused frequent absences from his fulltime duties to both the Boilermakers Union and the Bank of Labor. More specifically, the proffered evidence will demonstrate that Defendant Jones' habitual drinking caused him to delay and miss numerous meetings during domestic and international trips and that he charged thousands of dollars of alcoholic drinks to be delivered to his hotel rooms for personal use by arranging to have it charged to the Boilermakers Union master account with the hotel resort.

Finally, the Boilermakers Constitution provides that the International President and the International Secretary Treasurer both sign off on any non-routine expenditures. The proffered evidence will also show that Defendant Creeden, who was Secretary-Treasurer during eighteen (18) years of Jones' presidency, Fairley and McManamon were not only aware of Jones' purchase of alcohol for personal consumption using Boilermakers Union funds and his absences from his fulltime duties due to drinking, but nonetheless approved his expenses and cash out of vacation

hours Jones had already used.

### B. Purchase of Lucid Air Grand Tour Luxury Car and Private Jet Travel

In April 2022, the Government served a grand jury subpoena on the Boilermakers Union seeking comprehensive financial and operational documents in a criminal investigation. At some point thereafter, Defendant Newton Jones directed Blake and Uhlig to prepare a memorandum addressing the standards for expenditure of Boilermakers Union funds under its constitution and federal law.

The Boilermakers Union has had a number of different policies permitting officers to obtain an automobile for use in their official duties. In December 2016, the International Executive Committee changed the Boilermakers Union's automobile policy to permit replacement of the officer's union-made automobile after three (3) years of service or 35,000 miles, whichever comes first (Exhibit A, Automobile Replacement and/or Allowance Policy, Amended Dec. 16, 2016). In December 2017, the International Executive Council unanimously voted to limit the price for purchase of any union-made automobiles under the policy to $94,000 (Exhibit B, Automobile Replacement and/or Allowance Policy, Amended Dec. 13, 2017).

On September 19, 2022, Defendant Jones purchased a Lucid Air Grand Touring Luxury Car for $144,213.60 using Boilermakers Union funds wired from its general treasury to a Lucid dealer. (Exhibit C, p. 4, Wire Transfer of $144,213.60 to Lucid Motors). Defendant William Creeden had the constitutional duty to approve such non-routine purchases and controlled the Boilermakers Union general treasury accounts

Although Newton Jones worked in his home office in Chapel Hill and rarely traveled to the Union's Chapel Hill office, in an apparent lead-up to the purchase of this luxury vehicle, the

International Executive Counsel amended the automobile policy to suspend the price cap and drop the requirement that vehicle by "union made." (Exhibit D, Automobile Replacement and/or Allowance Policy, Amended February 21, 2022).[1]

The following day, on September 20, 2022, Blake and Uhlig released the memorandum requested by Defendant Jones. The September 20 memorandum, however, was not addressed to Defendants Newton Jones and William Creeden as the officials responsible for authorizing expenditures for the union, but to their respective chiefs of staff. By way of an explanation, the memorandum states cryptically:

> "A version of this memorandum was originally prepared to send to President Jones. However, the memorandum was not sent to President Jones. The purpose of the original memorandum was mooted by intervening factors.

(Exhibit F, Blake & Uhlig Memorandum, Sept. 20, 2022) (emphasis in original).

The following day, on September 21, 2022, Defendants Newton Jones and William Creeden approved a purchase of $577,812.50 of private jet travel using Boilermakers Union funds (Exhibit G, Creeden Approval of Private Jet Package; Exhibit H, Newton Jones execution of Magellan Jet, LLC Jet Card Ownership Agreement, Sept. 22, 2022). The Boilermakers Union officers had used private jet travel in the past including transport to events with dubious necessity to the union's objectives and/or with little or no benefit to the union, including transport to a Bank of Labor Christmas Party in Washington, the Northern Virginia Labor Awards, and a pheasant hunt in South Dakota at Paul Nelson Farm (Exhibit I, Previous Private Jet Use).

---

[1] The 2022 version of the Automobile Policy indicates that it was revised and effective on February 21, 2022. However, the minutes of the Internal Executive Committee held on that date indicate no action or discussion taken on the existing automobile policy. (Exhibit E - February 21, 2022 Minutes and Approval of Minutes).

## III. Applicable Principles

### A. Rule 404(b)

Federal Rules of Evidence Rule 404(b) provides that evidence of other crimes, wrongs, or acts is admissible for a variety of purposes, not limited to demonstrating intent, motive, opportunity, preparation, plan, knowledge, identity, or absence of mistake or accident. The primary purpose of Rule 404(b) is to remove undue restrictions on the admission of extrinsic evidence. Rule 404(b) thus operates as a rule of inclusion, rather than exclusion, of extrinsic evidence. The only exception to this general rule of inclusion is where the sole purpose of the evidence is to prove criminal disposition or character. Huddleston v. United States, 485 U.S. 681, 688-89 (1988). Accord United States v. Irving, 665 F.3d 1184, 1212 (10th Cir. 2011).

The proffered evidence of other acts, moreover, must only carry "at least one permissible inference" under the terms of Rule 404(b). Thus, if extrinsic evidence is probative of either a defendant's motive or opportunity or intent, etc., that evidence is admissible under Rule 404(b). Huddleston v. United States, 485 U.S. at 689 (finding evidence to have special relevance if it "would allow a juror to make at least one inference probative" of material issue). Accord United States v. Van Metre, 150 F.3d 339, 349-50 (4th Cir. 1998); United States v. Bowie, 232 F.3d 923, 930 (D.C. Cir. 2000) ("Rule 404(b) thus is not so much a character rule as a special aspect of relevance, constituting but one of many exceptions to the general rule that 'all relevant evidence is admissible.' The rule does not prohibit character evidence generally, only that which lacks any purpose but proving character.").

Procedurally, the trial court need not make a preliminary finding that the Government proved by a preponderance of the evidence that the defendant, in fact, committed the extrinsic acts.

The Court must only determine whether potentially extrinsic evidence is relevant within the context of Rule 404(b), and not offered merely to show bad character. Huddleston, 485 U.S. at 689 (extrinsic evidence should be admitted if the jury could "reasonably conclude that the act occurred and that the defendant was the actor."); United States v. Van Metre, 150 F.3d at 349-50. A defendant's offer to stipulate to an element of an offense does not render other acts evidence to that element inadmissible. Regardless of any stipulation, the Government is entitled to present evidence admissible under Rule 404(b) to the jury. See United States v. Crowder, 141 F.3d 1202, 1209-10 (D.C. Cir. 1998) and cited cases.

The question of whether evidence is relevant for a permissible purpose under Rule 404(b) is left to the discretion of the trial court. The tests for admission under both Fed. R. Evid. 401 and 403 are also given deference upon review. While the Government is required to articulate the relevance of the 404(b) evidence, the burden is not onerous. United States v. Robinson, 978 F.2d 1554, 1561-62 (10th Cir. 1992), cert. denied, 507 U.S. 1034 (1993). United States v. Sampson, 980 F.2d 883, 888 (3rd Cir. 1992). Some showing of a proper relevance is all that is needed. Id.

Once relevance is demonstrated, the trial court must next consider whether it must exclude any of the proffered evidence because "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "Unfair prejudice" under the rule means "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." Within this determination, any prejudicial impact must be extremely heavy in order for the evidence to be deemed inadmissible. See United States v. Cerno, 529 F.3d 926, 935 (10th Cir. 2008) (instructing "In engaging in the requisite balancing, [the Court] 'give[s] the

evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.'") (citation omitted).

Moreover, a trial court may minimize any potential danger of prejudice to defendant by issuing limiting jury instruction explaining the restricted purposes for which the other acts evidence may be permissibly considered. See Huddleston v. United States, 485 U.S. 681, 691 (1988) ("the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered for the purpose for which it was admitted."). Accord United States v. Mares, 441 F.3d 1152, 1156 (10th Cir. 2010); United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)).

## IV. Argument

### A. Evidence of Defendant Jones' Use of Boilermakers Union Funds for Personal Use of Alcohol, and Loss of Time Due to Drinking, is Intrinsic to Several Counts in the Indictment

#### 1. Count One: RICO Conspiracy

The proffered evidence of Defendant Jones' habitual drinking is intrinsic to several contentions within the RICO conspiracy alleged in Count One. A common thread in the proffered testimony is that Defendant Jones' drinking took him away from fulfilling his official fulltime duties to both the Boilermakers Union and the Bank Labor—a near impossible feat requiring eighty (80) hours per week every week when abstaining from drinking during working hours or otherwise becoming incapacitated by drinking. As set forth below, Defendant Jones' absences from duty for that reason bear upon his cash-out of vacation hours he already used; his non-attendance at events at lavish domestic and international trips he arranged that were paid for by the Boilermakers Union; his purchase of wine and spirits at union expense during personal dinners in Chapel Hill; and his non-entitlement to pension benefits reserved for fulltime employees of the

union and the Bank of Labor. See United States v. Portillo-Quezada, 469 F.3d 1345, 1353 (10th Cir. 2006) (explaining that "conduct which occurs during the life of a conspiracy and is a part of the same is direct evidence of the conspiracy and therefore not subject to Rule 404(b)").

Defendant Jones' public drinking at Boilermaker Union functions and personal dinners in Chapel Hill also constitutes proof of Defendant William Creeden as a member of the alleged conspiracy. Defendant Creeden's affirmative authorization as Secretary-Treasurer for Defendant Jones' purchase of alcohol at Boilermakers Union expense, his wasting of union time and resources due to drinking, and his non-fulfillment of fulltime duties to the union bear directly on his agreement to join the conspiracy alleged in Count One. In short, Defendant Creeden was aware of Defendant Jones' excessive drinking and approved payments from the Boilermakers Union treasury to support it. As the Tenth Circuit has instructed, an act done in furtherance of an alleged conspiracy is not an "other act"' under Rule 404(b), it is part of the conspiracy itself. " United States v. Molina, 75 F.3d 600, 602 (10th Cir. 1996). See also United States v. Irving, 665 F.3d 1184, 1212 (10th Cir. 2011); United States v. Parker, 553 F.3d 1309, 1314 (10th Cir. 2009).

Defendant Jones' longstanding habit of heavy drinking, and its consequences, also supports the membership of Defendants Warren Fairley and Lawrence McManamon in the alleged conspiracy in Count One. As vice-presidents of the Boilermaker Union, and members of the International Executive Council, they held a constitutional duty to supervise the expenses of the International President, to authorize all expenditures deemed necessary to effectuate or accomplish the objectives of the International union "for the sole benefit of the organization and its members," as well as the fiduciary duty under federal law "to hold [the union's] money and property solely for the benefit of the organization and its members . . ." 29 U.S.C. § 501(a). See Indictment, ¶

22; IBB Union Constitution, Articles 1.2, 5.2.

**2. Standalone Counts**

In addition to the RICO conspiracy in Count One, testimony concerning Defendant Jones' use of alcohol provides intrinsic evidence to many of the stand alone counts in the Indictment including:

-- his absences from and during extremely expensive domestic and international trips, which delay or extended any official events in the trip, are relevant to whether that the trips themselves were necessary expenditures within the meaning of the Boilermakers Constitution and/or that the trips paid for by the Boilermakers Union contained many unnecessary days or slack times caused by Jones' conduct;

--his absences from official union duties due to alcohol use bear upon the allegations that he took large periods of time away from those duties without using vacation hours, then cashed out his "unused" hours at the end of the year;

--his absences from his duties to the Boilermakers Union due to drinking are directly relevant to whether he could maintain fulltime employment with the Boilermakers Union, while at the same time maintaining fulltime employment with the Bank of Labor;

--his absences from his duties to the Boilermakers Union due to drinking are directly relevant to whether he was entitled to pensions from the Boilermaker-Blacksmith National Pension Fund or the Bank of Labor Retirement Plan which are calculated based upon numbers of hours actually worked;

--his absences from his duties to the Boilermakers Union provides evidence that he falsely claimed to work fulltime hours due to drinking are directly relevant to whether he could maintain fulltime employment with the Boilermakers Union, while at the same time maintaining fulltime employment with the Bank of Labor;

--his immoderate drinking substantiates the allegations that he and Defendant Kateryna Jones charged large amounts of food and drink at visits to hometown restaurants where no union business was conducted or where any such business could have been conducted in the Chapel Hill office of the Boilermakers Union;

--his use of the Boilermakers Union's master account at hotel resorts to surreptitiously obtain alcohol also provides proof of an intent to use Boilermakers Union funds to further personal entertainments; and

--his public use of expensive wine and spirits at Boilermakers Union meetings and trips demonstrates Defendant Creeden's knowledge of it and implicates him as Secretary-Treasurer in permitting Jones to use Boilermakers Union extensive funds on that personal habit.

**B. In the Alternative, Evidence of Defendant Jones' Use of Alcohol is Permissible Under Rule 404(b)**

As noted above, extrinsic evidence may be admitted if it is relevant to one of the permitted uses outlined in Rule 404(b) or for any other permissible purposes. Here, evidence of Defendant Jones' abuse of alcohol is relevant to his 1) intent and 2) opportunity and plan to enrich himself unlawfully at the expense of the Boilermakers Union in the manners described above, as well as Defendant Creeden's intent to assist him, and evidence of Fairley and McManamon's allowing the improper spending to continue despite their duties to stop it.

**1. Intent**

Defendant Jones' intent to commit the offense is an element in all of the counts against him in the Indictment alleging theft from the Boilermakers Union or the Bank of Labor. The evidence in the Government's case-in-chief will clearly demonstrate that Defendant Jones was aware of how any of his absences from official duty and direct purchase of expensive alcohol using his AMEX card and the union's master accounts at hotels would affect the Boilermakers Union's finances. The proffered evidence of Defendant Jones' heavy drinking at Boilermakers Union events thus reveals an intent to enrich himself at the union's expense, and similarly, at the expense of the Bank of Labor. See United States v. Mares, 441 F.3d 1152, 1157 (10th Cir. 2006) ("Subsequent acts evidence is particularly relevant when a defendant's intent is at issue.").

Similarly, the proffered evidence will establish Defendant William Creeden served as Secretary-Treasurer with Defendant Jones for eighteen (18) years; that he observed Jones' public

and heavy use of alcohol on countless occasions; and that he Creeden knew how Jones' drinking affected the Boilermakers Union treasury. Nonetheless, Defendants Creeden, McManamon and Fairley approved expenditures by Jones without pause involving vacation cash-outs, restaurant tabs, relocation expenses, no-show employment and so forth.

Accordingly, there exists a direct line between Defendant Jones' public abuse of alcohol, frequently on the Boilermakers Union tab, and Defendant Creeden, McManamon and Fairley's intent in not only approving Jones' use of alcohol at the union's expenses but all other questionable expenses alleged in the Indictment.

**2. <u>Opportunity and plan</u>**

A trial juror may be skeptical over whether Defendant Jones held the opportunity to make any or all of the questionable expenditures alleged in the Indictment without drawing the scrutiny and review of the Secretary-Treasurer and the International Executive Council. Defendant Jones' habitual and public drinking at Boilermakers Union expense is thus relevant to that inquiry. Defendant Creeden and the vice-presidents were present for more than a dozen years of Defendant Jones' heavy and expensive drinking at restaurants both home and abroad, his drinking during official meetings, and his absences from other duties due to drinking.

Nonetheless, all of Defendant Jones' questionable expenses and other lost resources related to his drinking were approved without question by Defendant Creeden, and the International Executive Council allowed the spending to continue despite the Boilermakers Union Constitution requiring the Executive Council to supervise all business and financial affairs of the International union and to authorize all expenditures deemed necessary to effectuate or accomplish the objectives of this International union for the sole benefit of the organization and its members.

Under those circumstances, jurors may permissibly regard Defendant Jones' history of alcohol use at the Boilermakers Union expense as relevant to his opportunity to spend Boilermakers treasury funds without any restraint from fellow officers or staff. See United States v. Watts, 535 F.3d 650, 658 (7th Cir. 2008) (holding that second-hand conversations that offender was source of stolen checks was properly admitted to establish offender held opportunity to steal checks); United States v. Provenzano, 620 F.2d 985, 993–95 (3d Cir. 1980) (finding that defendants' past use of fear and intimidation in labor relations admissible to show defendants' opportunity and plan to carry out alleged scheme). Accord United States v. Khanu, 664 F.Supp.2d 80, 85 (D.D.C. 2009), aff'd mem. 370 Fed. Appx. 121 (D.C. Cir. 2010) (finding defendant's prior instances of skimming receipts from nightclub admissible under Rule 404(b) to show opportunity, knowledge, intent, and/or plan to avoid employment taxes by paying employees in cash).

More specifically, Defendant Jones' use of hotel master accounts to obtain thousands of dollars of expensive wines sent to his room demonstrates his opportunity to obtain personal entertainment courtesy by the Boilermakers Union. Defendant Jones' acquisition of complementary wines and spirits in this manner may also be characterized as constituting a "plan" within the meaning of Rule 404(b). See United States v. Hudson, 884 F.2d 1016, 1021 (7th Cir. 1989) (finding evidence admissible to demonstrate plan where charged conduct and prior acts "have sufficient points in common.").

**C. <u>The Approval of the Purchases of the Lucid Air Grand Touring Luxury Car and Private Jet Travel Package by Defendants Newton Jones and William Creeden Constitutes Intrinsic Evidence to the Charged Offenses and/or Permissible Evidence Under Rule 404(b)</u>**

The intent of Defendants Newton Jones, William Creeden, Warren Fairley and Lawrence McManamon in making the alleged depredations from the Boilermakers Union treasury in the Indictment will likely be foremost in the coming trial. The proffered evidence concerning their purchase of the Lucid Air luxury car and a private jet travel package using Boilermakers Union funds provides an insight into Newton Jones' and William Creeden's tastes for personal luxury and intention to make unnecessary and unauthorized expenditures. Defendants Jones and Creeden greenlit those extravagances for themselves during a criminal investigation of financial misconduct within the union and memorandum from legal counsel addressing that conduct. The proffered evidence thus not only bears upon their intent to commit embezzlements from the union, but to do so while under scrutiny of their stewardship of the Boilermakers Union treasury.

Should the Court not view those purchases as intrinsic to the charged offenses, they nonetheless stand admissible pursuant to Rule 404(b). As noted above, other instances of extravagant and necessary expenditures by Defendants Jones and Creeden relate directly relate to both their intent and opportunity to commit the charged offenses.

**D. <u>The Probative Content of the Proffered Evidence Outweighs Any Prejudice</u>**

In this case, the probative value of the proffered evidence of Defendant Jones' alcohol use and purchase of luxury vehicle and private jet package is high and relates to multiple aspects of the offenses charged in the Indictment. In contrast, undue any prejudice generated by Defendant Jones' indiscriminate use of alcohol is likely to be minimal. Problems with alcohol, while certainly regrettable, are likely to be uncommon or misunderstood by jurors, and must less confuse

or stampede them into guilty verdicts not supported by the evidence. Lesser still, documentation of a wire transfer to a luxury car dealer or private jet operator holds virtually no prejudice value when compared to the indictment charges. See United States v. Silva, 889 F.3d 704, 712 (10th Cir. 2018) (holding exclusion under Rule 403 to be "extraordinary remedy and should be used sparingly.").

As noted above, the Supreme Court stated in Huddleston that a trial court may protect against potential prejudice in the admission of Rule 404(b) evidence by, among other things, giving the jury a limiting instruction "upon request" as provided for by Fed. R. Evid. 105; United States v. Record 873 F.2d 1363, 1376 (10th Cir. 1989) (citing Huddleston, 485 U.S. at 692 (emphasis added)). If the above-described evidence is admitted only pursuant to Rule 404(b), and the Court regards any danger of undue prejudice to be present, the Government would endorse such an instruction.

**Conclusion**

WHEREFORE, the United States moves for an order ruling the proffered evidence against Defendants Jones, Creeden, McManamon and Fairley respectively to be admissible either as intrinsic to the charges in Count One and the individuals counts listed above or a permissible 404(b) evidence (p. 2).

Respectfully submitted,

RYAN KRIEGSHAUSER
UNITED STATES ATTORNEY

By: */s/Faiza H. Alhambra*
FAIZA H. ALHAMBRA
Assistant United States Attorney
500 State Avenue, Suite 360

Kansas City, Kansas 66101
913-551-6904
913-551-6541 (fax)
Faiza.Alhambra@usdoj.gov
Kan. S. Ct. No. 24525

By: */s/ Jabari B. Wamble*
JABARI WAMBLE
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
913-551-6730
913-551-6541 (fax)
Jabari.wamble@usddoj.gov
Kan. S. Ct. No. 22730

By: */s/ Vincent Falvo*
VINCENT FALVO
Trial Attorney
Violent Crime and Racketeering Section
United States Department of Justice
1301 New York Avenue, NW, Room 753
Washington, D.C. 20530
(202) 353-9384
vincent.falvo@usdoj.gov

Dated December 1, 2025

**CERTIFICATE OF SERVICE**

I certify that on December 1, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all interested parties.

*/s/ Faiza H. Alhambra*
Faiza H. Alhambra
Assistant United States Attorney