IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                          Case No. 24-20070-05-DDC

LAWRENCE MCMANAMON (05),

Defendant.

**MEMORANDUM OPINION**

Defendant Lawrence McManamon has moved for a judgment of acquittal under Federal

Rule of Criminal Procedure 29 on all seven counts charged against him.  Doc. 408.  The

government declined to file a brief opposing the motion, opting instead to argue the issues orally.

The court has reserved ruling on six of those counts.  But it granted a judgment of acquittal for

Mr. McManamon on the charge in Count One, which accused him of conspiracy under 18 U.S.C.

§ 1962(d)—a provision of the Racketeer Influenced and Corrupt Organizations Act (RICO).

This Memorandum Opinion explains why.

I.        **Background**

The court assumes the reader's familiarity with some of the case's background and

provides only the facts necessary to understand this result on Count One.

The government indicted Mr. McManamon for his alleged role in a conspiracy to misuse

the funds of his employer—the International Brotherhood of Boilermakers Union (IBB)—to

enrich himself and his coconspirators.  Doc. 1 at 12–13 (Indictment).  From January 2009 to

August 2023, the Indictment alleges, Mr. McManamon participated in the activities of a RICO

conspiracy enterprise—dubbed "the Jones Enterprise" by the government—in his capacity as an

International Vice-President (IVP) of the IBB.  *Id.* at 13.  The purposes of the Jones Enterprise, according to the Indictment, included "[e]nriching members and associates of the Jones Enterprise . . . [and] [p]reserving and protecting the power and profits of the Jones Enterprise[.]" *Id.* at 12.  In addition to RICO conspiracy, the Indictment also charged Mr. McManamon with five counts of embezzling from a labor organization premised on specific international trips and one count of embezzling premised on vacation payouts.  *Id.* at 28–30, 41.  The court has reserved ruling on Mr. McManamon's Rule 29 motion on all the embezzlement charges.

The court has had multiple opportunities—both before and during trial—to consider the RICO conspiracy charge against Mr. McManamon.  The court first addressed the charge pretrial, in a Memorandum and Order (Doc. 340) issued after the April 10, 2026, *James* hearing.  There, the court concluded that the government hadn't shouldered its burden under Federal Rule of Evidence 801(d)(2)(E) to adduce some independent evidence that Mr. McManamon was a member of the alleged conspiracy.  Doc. 340 at 9–10; *see also United States v. Stein*, 985 F.3d 1254, 1269 (10th Cir. 2021) ("A district court's preliminary conclusion [under Fed. R. Evid. 801(d)(2)(E)] that the predicate conspiracy existed at most must be supported by some 'independent evidence' of the conspiracy other than the proffered coconspirator statements themselves, although such evidence need not be substantial." (quoting *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996))).  Specifically, the court held that Mr. McManamon's mere presence on international trips and at International Executive Council meetings—where the IEC allegedly had failed to review expenditures—didn't suffice to demonstrate that Mr. McManamon had agreed to violate the law.  Doc. 340 at 9–10.

At trial, the government redoubled its effort to establish Mr. McManamon's membership in the conspiracy.  This evidence focused on three primary activities:  (i) Mr. McManamon's

international—and allegedly lavish—travel for the IBB and the reimbursements that followed it; (ii) Mr. McManamon's cash out of unused vacation days; and (iii) Mr. McManamon's service on two IBB committees—the IEC and an "alternative" internal disciplinary committee, referred to as the Article 17 committee.

At trial, the government renewed its motion to find Mr. McManamon a member of the alleged conspiracy for Rule 801(d)(2)(E) purposes. And it filed a Supplement to that end. Doc. 402. In this Supplement, the government identified evidence it contended supported a membership finding—that is, Mr. McManamon had: (i) participated in lavish international trips that allegedly lacked union benefit; (ii) submitted receipts and received reimbursements for these trips; (iii) cashed out unused vacation; (iv) failed in his IVP duty of financial oversight; and (v) participated in the Article 17 alternative committee. *Id.* at 9–15. The court reviewed the evidence relied on by the government. And it again denied the government's renewed 801(d)(2)(E) motion in an oral ruling. It concluded that the government still hadn't shouldered its burden to demonstrate—by a preponderance of the evidence—that Mr. McManamon was a member of the alleged conspiracy.

In its oral ruling, the court noted, however, that this 801(d)(2)(E) conclusion didn't presage any ruling it might render on a Rule 29 motion targeting Count One. The court pointed the parties to two cases from the First Circuit which—in the absence of Tenth Circuit authority—guided its reasoning. *See United States v. Freeman*, 208 F.3d 332 (1st Cir. 2000); *United States v. Pitocchelli*, 830 F.2d 401 (1st Cir. 1987). These cases squarely address the relationship between a Rule 801(d)(2)(E) evidentiary ruling applying the preponderance standard and a Rule 29 acquittal ruling—where the court must take the evidence in the light most favorable to the government. *Freeman* explains that "a trial court's own evaluation of the evidence for purposes

of an evidentiary ruling does not preclude it from concluding that the jury might view the evidence differently" on the charge's merits.  208 F.3d at 342.  Thus, *Freeman* clarifies, it's

> not inconsistent for a court to conclude . . . based on its *own* inferences and credibility assessments, that it is more likely than not that no conspiracy existed, while, at the same time, concluding that the evidence, *viewed in the light most favorable to the government*, would permit a rational juror to find the defendant guilty beyond a reasonable doubt.

*Id.* at 343 (emphasis in original).  So, though the court has assessed the conspiracy evidence against Mr. McManamon twice under Rule 801(d)(2)(E), the Rule 29 inquiry requires it to apply a different standard.  The court recites that standard, below.  Then it explains why—even applying Rule 29's favorable-to-the-government standard—the court didn't submit the RICO conspiracy charge against Mr. McManamon to the jury.

## II.        Legal Standard

To decide a Rule 29 sufficiency-of-the-evidence challenge, the court looks "at 'the evidence in the light most favorable to the government to determine whether a rational trier of fact could have found the elements of the offense beyond a reasonable doubt.'"  *United States v. Tao*, 107 F.4th 1179, 1184 (10th Cir. 2024) (quoting *United States v. Johnson*, 821 F.3d 1194, 1201 (10th Cir. 2016)).  When conducting this review, the court doesn't "decide credibility issues or reweigh the evidence."  *Johnson*, 821 F.3d at 1201.  "The only question is 'whether the government's evidence, credited as true, suffices to establish the elements of the crime.'"  *Id.* (quoting *United States v. Hutchinson*, 573 F.3d 1011, 1033 (10th Cir. 2009)).

A Rule 29 acquittal is appropriate where "the evidence does no more than raise a mere suspicion of guilt or requires piling inference upon inference to conclude the defendant is guilty[.]"  *United States v. Dewberry*, 790 F.3d 1022, 1028 (10th Cir. 2015) (quotation cleaned up).  "While the jury may draw reasonable inferences from direct or circumstantial evidence, an inference must be more than speculation and conjecture to be reasonable."  *Id.* (quotation cleaned

up).  Indeed, "the evidence presented to support a conviction must be substantial."  *Id.* (quotation

cleaned up).

"An inference is unreasonable if it requires the jury to engage in a degree of speculation

and conjecture that renders its findings a guess or mere possibility."  *United States v.

Goldesberry*, 128 F.4th 1183, 1192 (10th Cir. 2025) (quotation cleaned up).  "Speculation and

conjecture" occur when a reasonable fact-finder is "left . . . with a number of equally reasonable

inferences[.]"  *Id.* at 1195 n.7 (quotation cleaned up).  "Any inference must be made beyond a

reasonable doubt if it goes to an ultimate conclusion underpinning criminal liability, *e.g.*,

satisfying an element of a crime necessary for conviction."  *Id.* at 1192–93 (quotation cleaned

up).

The court applies this standard to the government's evidence against Mr. McManamon,

below, starting with the elements of the conspiracy charge in Count One.

### III.        Elements of a RICO Conspiracy Charge

To prove that Mr. McManamon violated 18 U.S.C. § 1962(d), the government had to

prove the following four elements beyond a reasonable doubt:

*First element*:  that the Jones Enterprise, as charged in the Indictment, actually existed as

an enterprise affecting interstate commerce, and that a conspiracy or agreement existed between

two or more persons to participate in its affairs through a pattern of racketeering activity;[1]

*Second element*:  that the defendant deliberately joined or became a member of the

conspiracy or agreement with knowledge of its purpose;

---

[1]     During argument about jury instructions, the government conceded that the Indictment charged
the existence of the Jones Enterprise—even though the Tenth Circuit allows for an inchoate enterprise
theory under § 1962(d).  That is, our Circuit has concluded that the government needn't establish that an
enterprise existed to present a submissible RICO conspiracy charge.  *Harris*, 695 F.3d at 1132.  Here,
however, the Indictment charged the existence of the Jones Enterprise.  Doc. 1 at 11.  So, the jury
instructions—and thus the elements—reflect the government's charging decision.  Doc. 447 at 24.

*Third element*:  that the defendant agreed that someone, not necessarily the defendant, would commit at least two of the racketeering activities detailed in the Indictment; and

*Fourth elemen*t:  that there was interdependence among the members of the conspiracy.

Doc. 447 at 24; *see also United States v. Harris*, 695 F.3d 1125, 1131 (10th Cir. 2012) (reciting elements); *United States v. Caldwell*, 589 F.3d 1323, 1329 (10th Cir. 2009) (explaining interdependence); *United States v. Martinez*, 543 F. Supp. 3d 1209, 1217 (D.N.M. 2021) (including interdependence as a fourth RICO conspiracy element and explaining why interdependence—as a general conspiracy offense element under 18 U.S.C. § 371—also extends to a RICO conspiracy).

## IV.      Analysis

The court rests its Rule 29 analysis here on the second and fourth RICO conspiracy elements.  In a nutshell, the court concludes that—even taking the evidence in the light most favorable to the government—no "rational trier of fact could have found" Mr. McManamon a member of the conspiracy, with knowledge of its purpose, "beyond a reasonable doubt." *Tao*, 107 F.4th at 1184 (quotation cleaned up).  Nor could a rational trier of fact have found, beyond a reasonable doubt, interdependence between Mr. McManamon and other alleged coconspirators. The court unpacks these two decisive conclusions, in turn, below.

### A.      Membership in the Conspiracy

The government's first problem is element two.  Based on the evidence adduced by the government, no rational trier of fact could have found Mr. McManamon a member of the conspiracy with knowledge of its purpose.  Recall that to establish membership, the government must demonstrate that the defendant "deliberately joined or became a member of the conspiracy[.]" *Harris*, 695 F.3d at 1131.  "[M]ere presence is not sufficient in and of itself [to establish a conspiracy], nor is it sufficient for the government to show only mere association with

6

conspirators known to be involved in crime." *Caldwell*, 589 F.3d at 1331; *see also* Doc. 447 at 30. "The best way to assess a defendant's intended involvement in a conspiracy is to examine the conspiracy from that defendant's point of view. What exactly did [the defendant] think [he] was joining?" *United States v. Evans*, 970 F.2d 663, 674 (10th Cir. 1992).

Here, the government adduced three types of evidence trying to demonstrate that Mr. McManamon deliberately joined the conspiracy: (1) attending and expensing international trips; (2) securing vacation payouts in contravention of the 2015 payout policy; and (3) serving on the IEC and Article 17 committees—which allegedly failed to hold International President Newton Jones accountable for the way IBB spent its members' funds. Start with the international trips.

### 1.      International Trips

What exactly did Mr. McManamon think he was joining when he attended those international trips? It's undisputed that President Jones assigned Mr. McManamon to attend the trips. And both Tim Simmons and Tyler Brown—two witnesses called by the government— testified that if the International President tells an IVP to attend a trip, the IVP must attend. It's required—no ifs, no qualifiers, no doubt about it. What's more, three government witnesses— Warren Fairley, Amy Martin, and Kathy Stapp—all described Mr. McManamon's faithful and diligent work during these trips. They testified that Mr. McManamon consistently engaged in the meetings or other business activities whenever those activities occurred. And Ms. Stapp testified—without contrary evidence—that she often would see Mr. McManamon on business calls, all day long, during these trips. In short, the government adduced evidence to demonstrate that Mr. McManamon attended required work trips and worked while he was attending them. Then, he turned in his expense reports for expenses he incurred during these trips and was reimbursed by the IBB. Mere attendance doesn't demonstrate that he deliberately joined a conspiracy.

The government makes much of the trips' allegedly insufficient IBB purposes.  In their Rule 29 oral argument, for instance, the government contended that repeated trips to Italy to meet with designees from an Italian union didn't further the union's interests.  But the government never adduced any evidence that Mr. McManamon had any hand in determining which trips President Jones should assign—or when or to whom.  What's more, the government never adduced any evidence that Mr. McManamon took a trip on IBB's dime that was unassigned by the IBB's president.  All the evidence indicates is that Mr. McManamon attended the trips assigned to him and completed the work he was assigned while he attended.  He was merely present—which doesn't suffice to establish membership in the conspiracy.  *See Caldwell*, 589 F.3d at 1331.  No rational trier of fact could have found beyond a reasonable doubt that Mr. McManamon deliberately joined the conspiracy simply because he attended these assigned international trips.  Indeed, it is "equally reasonable" to infer that he went on the trips because his boss told him to go.  *Goldesberry*, 128 F.4th at 1195 n.7 (quotation cleaned up).  So, "a reasonable jury must necessarily entertain a reasonable doubt[.]"  *Id.* (quotation cleaned up).  To conclude otherwise would require "a degree of speculation and conjecture" constituting no more than "a guess or mere possibility."  *Id.* at 1192 (quotation cleaned up).

The government, perhaps sensing the thin ice its evidence occupies—*as it applies to Mr. McManamon*—highlights activities he engaged in outside of business while on these international trips.  In the government's view, this evidence put Mr. McManamon's role beyond mere attendance on particular trips.  Two government witnesses testified that Mr. McManamon twice may have indulged in extra-business activities while on an IBB trip—one in London and one in Australia.  And an email admitted into evidence indicates a third extra-business activity during travel to Peru.  Next, the court describes the evidence of the three extra-business activities

8

and then analyzes that evidence under a sufficiency standard.  Ultimately, under that scrutiny, the government's thin ice gives way under the legal burden imposed by Count One's charge.

*First*, Mr. Brown testified that, in 2020, Mr. McManamon may have stayed longer in London than required for IBB's business purpose—the TSSA conference.  Mr. Brown acknowledged uncertainty, however, about whether Mr. McManamon stayed back, explaining that they all used different airlines so they all kind of scattered.  And the government never adduced any other evidence demonstrating an extra-long stay in London—or that any lengthened stay was at IBB expense.  Indeed, the government's evidence of Mr. McManamon's expenses suggest just the opposite—a hotel departure date and return flight dated February 9, 2020.  *See* Gov't Ex. 446 at 29–30 (IBB0099117, IBB0099130); Gov't Ex. 311h (IBB0099119) (flight receipt listing departure date of February 9); Gov't Ex. 311i (IBB0099130) (hotel receipt showing departure date of February 9).  That departure date aligns with the duration of the trip assigned by President Jones in his assignment letter.  *See* Gov't Ex. 311-c (IBB0053156) (Assignment Letter designating February 10, 2020, as return date).

*Second*, Mr. Fairley and Mr. Brown testified that they never saw Mr. McManamon in Perth/Mandurah, Australia at an IndustriALL shipbuilding meeting in 2016.  Both suggested that Mr. McManamon, instead, stayed back in Sydney with Newton and Kateryna Jones, making his 2016 Australia trip expenses an improper extra-business activity.  But defense counsel met these vague aspersions by introducing a hotel bill for Mr. McManamon showing a stay in Mandurah, Australia—a bill which includes mini-bar charges that suggest actual use of the room.  Def. Ex. 2981 (RD1_JONES_748513).  Defense counsel also introduced an airline ticket reservation in Mr. McManamon's name for travel from Sydney to Perth on the date in question.  Def. Ex. 2983 (RD1_JONES_748506); Def. Ex. 2984 (RD1_JONES_748505).  Statements that witnesses never

9

saw Mr. McManamon in Perth isn't tantamount to evidence that he wasn't there.  And it's legally inadequate when it's overcome by actual evidence that he was present in Perth.

*Third*, the government introduced an email into evidence where, in 2015, Mr. McManamon agreed to attend a two-day cultural event in Cusco, Peru, during an IBB trip to Lima for the UN Climate Change Conference.  Gov't Ex. 339-n (RD11_JONES_021368).

Based on these three categories of evidence, and taking all inferences in the light most favorable to the government, the court assumes that the jury could have inferred that Mr. McManamon stayed longer in London, that he never travelled to Perth, and that he engaged in a two-day excursion in Peru.  Even so, the jury would have to take yet another step.  Extra days and a side trip don't necessarily equal membership in a conspiracy—that conclusion requires yet another inference.  The jury also would have to infer that those three extra-business activities— totaling less than 14 days—demonstrate that Mr. McManamon deliberately joined a racketeering conspiracy spanning 14 years.  Recall that where "the evidence does no more than raise a mere suspicion of guilt or requires piling inference upon inference to conclude the defendant is guilty," a Rule 29 acquittal is appropriate.  *Dewberry*, 790 F.3d at 1028 (quotation cleaned up).  And "the evidence presented to support a conviction must be substantial."  *Id.* (quotation cleaned up).  Invoking just those three occasions to demonstrate membership in a 14-year-long conspiracy hardly qualifies as substantial.

At most—and this treats the government's evidence generously—those three instances put the evidence of Mr. McManamon's international travel in equipoise.  Evidence sits in equipoise where it "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence."  *Goldesberry*, 128 F.4th at 1193 (quotation cleaned up).  The government's evidence situated Mr. McManamon on dozens of trips over more than a dozen years.  And the

evidence about almost all of those trips merely put Mr. McManamon at the scene—having

received an assignment *from his boss* to attend—with no indication of extra-business activity.

Instead, government witnesses testified that he faithfully carried out his duties while travelling.

If the court—generously—finds equipoise between those mere-attendance trips and these three

instances of extra-business activity, acquittal is still appropriate.  Where the evidence sits in

equipoise—after viewing the evidence and inferences from it in the government's favor—no

conviction may follow "because under these circumstances a reasonable jury *must necessarily*

*entertain* a reasonable doubt."  *Id.* (emphasis in original) (quotation cleaned up).  Here, a rational

factfinder necessarily must entertain a reasonable doubt that Mr. McManamon's international

travel with the IBB demonstrates his membership in the Jones Enterprise.[2]  Wouldn't a racketeer

who deliberately had joined a conspiracy to enrich himself and his coconspirators over a span of

14 years do more than indulge in a handful of extra days?

### 2. Vacation Payout

---

[2]     When arguing Mr. McManamon's Rule 29 motion orally, the government leaned on Mr. Fairley's plea agreement.  The government emphasized that the court found Mr. Fairley's factual basis adequate to accept his guilty plea on the RICO conspiracy charge.  And then the government argued that Mr. McManamon was similarly situated with Mr. Fairley—both had served as IVPs, both had managed particular geographic call areas, and both had sat on the IEC with its attendant duties.  When Mr. Fairley pleaded guilty to a racketeering conspiracy, the government contended, he pleaded guilty to needlessly lavish trips like the Paris 2009 trip—where Mr. McManamon likewise attended.  The government thus drew a line between the factual basis for Mr. Fairley's guilty plea and the question of sufficient evidence to place Mr. McManamon within the RICO conspiracy.

But Tenth Circuit case law plainly forbids use of a co-conspirator's or co-defendant's guilty plea as substantive evidence of another defendant's guilt.  *See United States v. Nickl*, 427 F.3d 1286, 1294 n.2 (10th Cir. 2005) ("A prosecutor may properly use a codefendant or coconspirator's guilty plea to aid the jury in its assessment of the codefendant or coconspirator's credibility, but may not use the guilty plea as substantive evidence of a defendant's guilt."); *United States v. Whitney*, 229 F.3d 1296, 1304 (10th Cir. 2000) ("A codefendant's guilty plea may not be used as substantive evidence of a defendant's guilt." (quotation cleaned up)).  The court was surprised by the government's guilty plea theory given explicit, binding Circuit authority rejecting that theory.  The government's stubborn attachment to the theory at the Rule 29 stage is more bothersome yet.  In short, the court doesn't consider Mr. Fairley's guilty plea in its analysis of the membership evidence against Mr. McManamon.

Nor does Mr. McManamon's vacation payout request alter the court's Rule 29 analysis on RICO's membership prong. The government adduced evidence that Mr. McManamon—at an IEC meeting on February 28, 2015—moved to limit vacation payout to two weeks. Gov't Ex. 131 at 6–7 (RD11_JONES_008759–60). And the IEC then voted unanimously to amend the vacation payout policy as Mr. McManamon had proposed. *Id.* at 7 (RD11_JONES_008760); *see also* Gov't Ex. 133 (RD11_JONES_008772–74) (resolution about vacation policy—as amended on February 28, 2015). Despite this amended policy, the evidence demonstrates that Mr. McManamon submitted requests for—and received—vacation payouts in excess of that two-week limit. Gov't Ex. 298 (IBB17c_2743861) (email from Mr. McManamon requesting five weeks of vacation payout); Gov't Ex. 414 (RD11_JONES_023793) (lead investigator's table of Mr. McManamon's vacation payout). The government argued that such a policy-breaking request in the 801(d)(2)(E) context demonstrated Mr. McManamon's membership in the alleged conspiracy. Doc. 402 at 11–12. Indeed, the government contended that Mr. McManamon's vacation payout request was all the more egregious because he himself had proposed the policy limit. *Id.*

But at least two government witnesses—Mr. Brown and Debbie Goodwin—testified that President Jones refused to implement the new vacation policy. And the government adduced email evidence showing that President Jones imposed a freeze on the new policy, despite the IEC's unanimous vote. Gov't Ex. 155 (RD11_JONES_016637–38) (October 2015 email indicating a hold on implementing new vacation policy); Gov't Ex. 156 (RD11_JONES_016639) (April 2020 email indicating 2015 revision to vacation policy never implemented). Indeed, an email from April 2, 2020, definitively states that "the change was not made to the policy after the IEC Meeting." Gov't Ex. 156 at 1 (RD11_JONES_016639).

The vacation policy evidence—taken as a whole—doesn't support an inference that Mr. McManamon had joined the conspiracy.  In a sufficiency-of-the-evidence analysis, the court doesn't "'give the government the benefit of *every potential* inference but rather, only those inferences reasonably and logically flowing from the other evidence adduced at trial.'" *Goldesberry*, 128 F.4th at 1192 (emphasis in original) (quoting *United States v. Santistevan*, 39 F.3d 250, 258 (10th Cir. 1994)).  An inference that Mr. McManamon deliberately joined the alleged conspiracy because he requested vacation payout in contravention of the 2015 vacation policy doesn't flow reasonably and logically from the adduced evidence.

Instead, the government's own evidence shows that the IBB never implemented the policy.  His request for a vacation payout exceeding two weeks thus didn't break an implemented policy—but an ineffective one.  Only speculation or conjecture could lead a reasonable jury to infer requesting vacation payout in violation of a never-implemented policy demonstrates membership in a conspiracy.  What's more, Mr. McManamon's role in proposing the vacation policy contradicts an inference of membership in the Jones Enterprise.  If Mr. McManamon had joined the Jones Enterprise and purposed to enrich its members and associates through embezzling union funds, why would he actively seek to limit vacation payouts—a potential embezzlement source?  Even viewing the evidence in the light most favorable to the government, no rational factfinder could infer Mr. McManamon deliberately joined the alleged conspiracy— beyond a reasonable doubt—based on the vacation-payout evidence.

### 3. Council and Committee Work

Finally, Mr. McManamon's roles on the IEC and as a member of the alternative Article 17 committee likewise don't suffice for a rational trier of fact to infer his membership in the Jones Enterprise.  Take the IEC role first.

### a. IEC

The government argued—when seeking to admit coconspirator statements against Mr. McManamon—that his failure to exercise his duty of oversight as an IVP demonstrates conspiracy membership.  Doc. 402 at 12.  At trial, the government adduced evidence that Article 5.2 of the IBB constitution and the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 501(a), imposed a duty of oversight on Mr. McManamon.  *See* Gov't Ex. 3 at 33 (RD5_JONES_060762) ("The Executive Council shall have the power to supervise all business and financial affairs of the International union and to authorize all expenditures deemed necessary to effectuate or accomplish the objectives of this International union[.]").  The court already has rejected the argument that failing to require the IEC to review expenses demonstrates Mr. McManamon's conspiracy membership.  Doc. 340 at 10 ("[T]he court can't infer from his . . . lackadaisical performance at work meetings that McManamon agreed to violate the law.").  Indeed, other IVPs who similarly sat on the IEC when it failed to review expenses continue to serve even now as IBB leaders.

Take Tom Baca, for example.  The IEC meeting minutes indicate that Mr. Baca was an IVP starting—at the latest—in February 2009.  Gov't Ex. 11b at 1 (RD11_JONES_006313).  And he attended the Paris 2009 IEC meeting.  *Id.* at 22 (RD11_JONES_006334).  The IEC meeting minutes consistently list Mr. Baca as an IVP during the Indictment period—for example in December 2015, October 2019, and August 2024.  *See, e.g.*, *id.* at 483, 841, 2140 (RD11_JONES_006795, RD11_JONES_007153, RD11_JONES_008452).  And Mr. Simmons testified that Mr. Baca continues to serve as an IVP of the IBB today.  So, how could a reasonable jury infer conspiracy membership merely from Mr. McManamon serving on a negligent IEC during the Indictment period?  Other IVPs did the same thing.  As the court

14

explained above, neither mere presence at the IEC meetings nor mere association with the IEC suffice to demonstrate conspiracy membership. *Caldwell*, 589 F.3d at 1331.

### b.    Alternative Article 17 Committee

Finally, the government adduced evidence that President Jones formed an alternative Article 17 committee. Gov't Ex. 44 at 1 (RD11_JONES_025947–48). Article 17 of the IBB constitution provides for internal disciplinary proceedings when an IBB officer or member is accused of committing specified offenses against the union. Gov't Ex. 3 at 56–57 (RD5_JONES_060785–86). After having Article 17 charges filed against him, President Jones appointed Mr. McManamon and Mr. Creeden to investigate. Gov't Ex. 44 at 1 (RD11_JONES_025947). Mr. Simmons testified that a different Article 17 committee already existed to perform that investigative function. And Ms. Stapp testified that she believed President Jones appointed Mr. McManamon to the alternative committee because he wanted people favorable to him investigating the charges. The interim report from the alternative committee considered the issues of backpay to Kateryna Jones, President Jones's meals in his hometown, and his flights to Ukraine. Gov't Ex. 51 at 1 (RD11_JONES_026244). The interim report concluded that Mr. Jones had engaged in minor malfeasance by improperly charging some meals to the IBB. *Id.* at 10–11 (RD11_JONES_026253–54). And it reserved judgment about one of the at-issue flights to Ukraine, requiring Mr. Jones to provide additional information. *Id.* at 11 (RD11_JONES_026254).

Serving on an internal disciplinary committee at the behest of one's boss does not a co-conspirator make. And particularly not where a witness—Mr. Simmons—testified that the interim report wasn't consistent with a written work produced by Mr. McManamon. Indeed, another witness—attorney Jason McClitis—confirmed that *he* had drafted the interim report, not Mr. McManamon. Mr. McManamon didn't even sign the report with his own hand. Taking all

the evidence in the light most favorable to the government, Mr. McManamon instead authorized Ms. Stapp to sign both on his behalf. Even inferring such authorization, however, Mr. McManamon's service on the alternative committee doesn't evince membership in a 14-year RICO conspiracy.

Recall that our Circuit considers an inference premised on speculation and conjecture—which "renders its findings a guess or mere possibility"—an unreasonable one. *Goldesberry*, 128 F.4th at 1192 (quotation cleaned up). Inferring that Mr. McManamon's appointed role on a work committee reveals his membership in a longstanding criminal conspiracy is just such a guess. It's "equally reasonable" to infer that Mr. McManamon participated in the alternative committee as an employee assigned to do so—not a coconspirator attempting to conceal activities. And where "the evidence gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence . . . a reasonable jury *must necessarily entertain* a reasonable doubt." *Id.* at 1193 (quotation cleaned up). Here, the evidence of Mr. McManamon's role on the Article 17 committee gives equal circumstantial support to the theory that he was simply doing his assigned job as it does to the theory that he was striving to conceal conspiratorial activities.

### 4.     Membership Evidence as a Whole

Although the court has analyzed purported membership evidence in categories—for ease of understanding—the governing law requires a holistic approach. Our Circuit has instructed that courts considering the sufficiency of the evidence shouldn't examine it "in bits and pieces, but instead consider the collective inferences to be drawn from the evidence as a whole." *Id.* at 1192 (quotation cleaned up). So, the court pauses to assess the whole of the evidence about Mr. McManamon's conspiracy membership. Considering the evidence in the light most favorable to

the government—as it must—the court concludes the membership evidence would allow a juror

to infer the following:

- Mr. McManamon attended numerous international trips on IBB's dime where he stayed at luxurious hotels.  At least some of those conferences may have had only minimal IBB purpose.  President Jones assigned Mr. McManamon to attend all of these international trips.  And the IBB reimbursed Mr. McManamon for his expenses.  On three occasions—at most—Mr. McManamon's IBB travel may have involved extra days or a cultural side trip.

- Mr. McManamon cashed out vacation time exceeding two weeks.  The IEC adopted a policy limiting vacation payouts to two weeks in 2015.  But President Jones placed the policy on hold, never implementing it.

- Mr. McManamon served as a member of the IEC when the council repeatedly failed to review IBB expenditures and as a member of the alternative Article 17 committee—which found just minor malfeasance on the part of President Jones.

The collective inferences drawn from the membership evidence as a whole can't support a

finding of guilt beyond a reasonable doubt.  It's "equally reasonable" to infer that Mr.

McManamon's actions reveal attendance at required work events and compliance with his boss's

directives as it is that they reveal membership in a RICO conspiracy.  *Id.* at 1195 n.7.  In short, a

factfinder couldn't conclude reasonably that "the defendant's guilt has been established with

utmost certainty . . . on each element of the offense."  *Id.* at 1192 (quotation cleaned up).

If the paucity of inferences supporting Mr. McManamon's membership in the conspiracy

doesn't convince, a comparable paucity of support on the interdependence prong will do so.

## B.    Interdependence

Interdependence among co-conspirators is also a requisite element of a conspiracy

charge.  *Caldwell*, 589 F.3d at 1329.  No trier of fact could have found interdependence beyond a

reasonable doubt between Mr. McManamon and other alleged coconspirators.

"Interdependence exists where each co-conspirator's activities constituted essential and

integral steps toward the realization of a common, illicit goal."  *United States v. Foy*, 641 F.3d

17

455, 465 (10th Cir. 2011) (quotation cleaned up). "Interdependence is present when each alleged coconspirator depends on the operation of each link in the chain to achieve the common goal. In essence, the defendant's actions must facilitate the endeavors of other alleged coconspirators or facilitate the venture as a whole." *Evans*, 970 F.2d at 670.

Here, the government has failed to demonstrate that Mr. McManamon's alleged conspiratorial actions facilitated the endeavors of other alleged coconspirators or the venture itself. For example, Mr. McManamon's presence on international trips in no way affected other alleged coconspirators' ability to participate in lavish travel. The government's evidence never showed that Mr. McManamon had any part in determining which trips President Jones assigned, to whom he assigned those trips, or where (and how long) the assignees stayed. Imagine Mr. McManamon had decided not to go on one of the trips. The government never demonstrated such opting out by Mr. McManamon would have affected any change in the other alleged coconspirators' travel, accommodations, or expenses.

Consider an analogous interdependence problem in a drug conspiracy case. In *United States v. McIntyre*, the Tenth Circuit emphasized that "each alleged coconspirator must depend on the successful operation of each 'link' in the chain to achieve the common goal." 836 F.2d 467, 471 (10th Cir. 1987) (quotation cleaned up). Premised on that interdependence requisite, the government had "not shown that if defendant had failed to possess and distribute drugs on any one of the named occasions, the failure would have had any effect on the success of the other transactions." *Id.* at 472. In short, the Circuit required that the defendant function as a link in the chain. Breaking such a link must threaten the success of the common goal—or it's not a link.

Here, the government never showed that Mr. McManamon functioned as such a link. He never stood in a position to "facilitate the endeavors of other alleged coconspirators or facilitate

18

the venture as a whole." *Evans*, 970 F.2d at 670 (quotation cleaned up). That is, the government never adduced evidence that—had Mr. McManamon failed to attend any of the international trips—it would have had any effect on the success of the coconspirators' ability to enrich themselves through lavish accommodations and extravagant meals. Similar logic negates the efficacy of any evidence about Mr. McManamon's vacation payouts. Had Mr. McManamon failed to cash out his vacation in excess of two weeks, it wouldn't have undermined the other coconspirators' abilities to cash out their own. Nor would Mr. McManamon's failure to serve on the IEC or the alternative Article 17 committee have prevented the success of any conspiratorial objective. To the contrary, his service on the IEC—at least when it came to proposing limits on vacation payout—tended to undermine the conspiracies' embezzlement objectives, not facilitate them. In sum, the government presented insufficient evidence to establish interdependence between Mr. McManamon and the other alleged conspirators. This failure independently requires the Rule 29 acquittal on Count One, as applied to Mr. McManamon.

## V.       Conclusion

Our Circuit has admonished courts to employ special caution in conspiracy cases. It instructs courts to "be particularly vigilant when the government seeks to bring many individuals under the umbrella of a single conspiracy." *Id.* at 674. And it explains why such caution is merited:

> The risk is that a jury will be so overwhelmed with evidence of wrongdoing by other alleged coconspirators that it will fail to differentiate among particular defendants. The government must not be allowed to use conspiracy as a tool to circumvent the fundamental principle that "[g]uilt with us remains individual and personal . . . It is not a matter of mass application."

*Id.* (quoting *Kotteakos v. United States*, 328 U.S. 750, 772 (1946)). Exercising the recommended vigilance here, the court acquitted Mr. McManamon on Count One—the RICO conspiracy charge. A factfinder reasonably couldn't conclude that Mr. McManamon's "guilt has been

established with utmost certainty . . . on each element of the offense"—whether that element is deliberately joining the conspiracy or interdependence.  *Goldesberry*, 128 F.4th at 1192.  And so, under a sufficiency-of-the-evidence analysis, the court found acquittal under Rule 29 appropriate.  This Order memorializes the court's reasoning for that holding.

**Dated this 14th day of July, 2026, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

20